**Electronically Filed
Supreme Court
SCWC-18-0000380
05-APR-2023
07:57 AM
Dkt. 33 SO**

SCWC-18-0000380

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---

PHH MORTGAGE CORPORATION
Respondent/Plaintiff-Appellee,

vs.

ASSOCIATION OF APARTMENT OWNERS OF ELIMA LANI CONDOMINIUMS,
Petitioner/Defendant-Appellant,

and

JOHN C. PATTERSON; FENNY J.M. PATTERSON; and
STATE OF HAWAI'I DEPARTMENT OF TAXATION,
Respondents/Defendants-Appellees.

---

CERTIORARI FROM THE INTERMEDIATE COURT OF APPEALS
(CAAP-18-0000380; CASE NO. 3CC14100121K)

SUMMARY DISPOSITION ORDER
(By: Recktenwald, C.J., Nakayama, McKenna, and Eddins, JJ.,
and Wilson, J., assigned by reason of vacancy[1])

## I.   INTRODUCTION

This case is brought by Association of Apartment

Owners of Elima Lani Condominiums (AOAO), the same condominium

---

[1]   See Order of Designation filed on March 29, 2023, in
SCMF-23-0000218.

association that brought suit in Nationstar Mortg., LLC v. AOAO, No. SCWC-18-0000475, 2023 WL 2519855 (Haw. Mar. 15, 2023). The facts of this case are similar to Nationstar. AOAO foreclosed on the previous owners of a condominium based on delinquent assessments.[2] Then, the mortgage lender, PHH Mortgage Corporation (PHH), foreclosed on AOAO. AOAO argues that it remained entitled to exclusive possession and rents after the entry of summary judgment and an interlocutory decree of foreclosure, and prior to the confirmation of sale, and that the circuit court therefore erred when it appointed a commissioner to collect rents.

For the reasons given in Nationstar, we hold that AOAO was not entitled to possession of the condominium or rents during the period between summary judgment and confirmation of sale. See id. at *5. In general, an association may be entitled to some or all rental proceeds collected during this period, as specified by Hawai'i Revised Statutes (HRS) § 514B-146(n) (Supp. 2015).[3] Id. at *10. However, in this case,

---

[2] The Honorable Henry T. Nakamoto and the Honorable Robert D.S. Kim presided. The Honorable Ronald Ibarra presided over the proceedings on PHH's first summary judgment motion, which was withdrawn and is not the subject of this appeal.

[3] HRS § 514B-146(n) was numbered as HRS § 514B-146(k) before the statute was renumbered in 2018, and it is referred to as HRS § 514B-146(k) in the briefing. See 2018 Haw. Sess. Laws Act 195, § 4 at 672. Because there was no change to the substance of the statute, we refer to the current numbering, HRS § 514B-146(n), throughout. See id.

(continued . . .)

the Commissioner did not collect any rents. Because the ICA correctly held the circuit court did not err in ordering the Commissioner to take possession and collect rents, and there are no rents to allocate under HRS § 514B-146(n), we affirm.

## II. BACKGROUND

On March 27, 2014, PHH filed a verified complaint in the Circuit Court of the Third Circuit against John C. Patterson and Fenny J.M. Patterson (the Pattersons) for foreclosure of their property. PHH alleged it was entitled to foreclose on the

---

(continued . . .)
HRS § 514B-146(n) provides:

After any judicial or nonjudicial foreclosure proceeding in which the association acquires title to the unit, any excess rental income received by the association from the unit shall be paid to existing lien holders based on the priority of lien, and not on a pro rata basis, and shall be applied to the benefit of the unit owner. For purposes of this subsection, excess rental income shall be any net income received by the association after a court has issued a final judgment determining the priority of a senior mortgagee and after paying, crediting, or reimbursing the association or a third party for:
    (1)  The lien for delinquent assessments pursuant to subsections (a) and (b);
    (2)  Any maintenance fee delinquency against the unit;
    (3)  Attorney's fees and other collection costs related to the association's foreclosure of the unit; or
    (4)  Any costs incurred by the association for the rental, repair, maintenance, or rehabilitation of the unit while the association is in possession of the unit including monthly association maintenance fees, management fees, real estate commissions, cleaning and repair expenses for the unit, and general excise taxes paid on rental income;
provided that the lien for delinquent assessments under paragraph (1) shall be paid, credited, or reimbursed first.

(Emphasis added.)

3

property based on the Pattersons' default on a note and mortgage that PHH held.  On May 29, 2014, AOAO filed its answer to the complaint and claimed an interest in the property based on having previously foreclosed on it.  On July 14, 2017, PHH filed a motion for summary judgment and requested that the court appoint a commissioner to sell the property and, after costs, award the amount owed to PHH.

On February 28, 2018, the circuit court orally granted summary judgment in favor of PHH and explained: "[O]nce I appoint a commissioner[,] that person has equitable and legal title to the property, has the power to terminate the lease, . . . collect rents, and actually becomes the equitable and legal title owner of the property pending the sale."  (Emphasis added.)  The circuit court, in its April 4, 2018 written order granting summary judgment in favor of PHH, then appointed a commissioner.  The circuit court ordered that the Commissioner "shall henceforth hold all equitable and legal title to the Mortgaged Property" and was authorized "to take possession of the Mortgaged Property, to rent the Mortgaged Property pending foreclosure, if appropriate, and to sell the Mortgaged Property."  (Emphasis added.)

The Commissioner reported that although the property was occupied as of his initial inspection on April 9, 2018, on subsequent inspections on May 10 and 15, 2018, the property was vacant; the property managers informed the Commissioner that AOAO had been renting the unit out but the tenant had since vacated. The circuit court approved the Commissioner's report and granted PHH's motion for confirmation of foreclosure sale on December 4, 2018. Because the Commissioner reported that the property was vacant during the period between when the circuit court granted PHH's motion for summary judgment and when it granted PHH's motion for confirmation of foreclosure sale, and he did not report seeking a renter during that period, it is clear that the Commissioner did not collect any rental proceeds.

On appeal, AOAO raised two points of error, arguing the circuit court erred when it: (1) ordered that AOAO's possessory interest and right to collect rent from the subject property was extinguished upon entry of the foreclosure decree and summary judgment; and (2) vested the Commissioner with legal and equitable title to the foreclosed property prior to the confirmation of sale. The ICA held that the circuit court did not abuse its discretion on either point.

First, the ICA held that "a judgment entered on a foreclosure decree is a final determination of a foreclosed party's ownership interests." It concluded that the circuit court therefore did not err in ordering the Commissioner to take possession of the property, including the collection of rental proceeds. Second, the ICA held that the circuit court had merely ordered that the Commissioner temporarily <u>hold</u> legal and equitable title to the property to carry out his function as Commissioner, not that title was vested in him. The ICA further concluded based on its precedents that "even if the Foreclosure Decree could be construed as (erroneously) vesting title to the Property in the Commissioner, any such error was harmless."[4] <u>See Bank of N.Y. Mellon v. Larrua</u>, 150 Hawaiʻi 429, 443-44, 504 P.3d 1017, 1031-32 (App. 2022); <u>U.S. Bank Tr. v. Ass'n of Apartment Owners of Waikoloa Hills Condo.</u>, 150 Hawaiʻi 573, 581-82, 506 P.3d 869, 877-78 (App. 2022) (as amended).

AOAO filed a timely application for certiorari arguing that the ICA gravely erred by holding AOAO did not maintain a possessory interest in the foreclosed unit. AOAO asserted functionally identical arguments as those it made before us in its briefing for <u>Nationstar</u>. It argued that per HRS § 514B-

---

[4] The ICA did not reach the question of whether HRS § 514B-146(n) entitled AOAO to collect rental proceeds after summary judgment but before confirmation of sale.

6

146(b) (Supp. 2015), it was entitled to maintain ownership of the property until after the foreclosure sale is confirmed.[5] AOAO further argued that the legislative history and plain language of HRS § 514B-146(n) support its argument that it is entitled to possession and rent after summary judgment but prior to confirmation of sale.

In response, PHH first argued that AOAO's application was rendered moot by the fact that the commissioner never collected any rents.[6]  PHH then argued that, in any event, AOAO

---

[5]    HRS § 514B-146(b) provides in relevant part:

Except as provided in subsection (j), when the mortgagee of a mortgage of record or other purchaser of a unit obtains title to the unit as a result of foreclosure of the mortgage, the acquirer of title and the acquirer's successors and assigns shall not be liable for the share of the common expenses or assessments by the association chargeable to the unit that became due prior to the acquisition of title to the unit by the acquirer.  The unpaid share of common expenses or assessments shall be deemed to be common expenses collectible from all of the unit owners, including the acquirer and the acquirer's successors and assigns.  The mortgagee of record or other purchaser of the unit shall be deemed to acquire title and shall be required to pay the unit's share of common expenses and assessments beginning:
        (1) Thirty-six days after the order confirming the sale to the purchaser has been filed with the court;
        (2) Sixty days after the hearing at which the court grants the motion to confirm the sale to the purchaser;
        (3) Thirty days after the public sale in a nonjudicial power of sale foreclosure conducted pursuant to chapter 667; or
        (4) Upon the recording of the instrument of conveyance;
whichever occurs first . . . .

[6]    We disagree with PHH's argument that the case was rendered moot by the fact that no rents were collected.  "A case is moot if it has 'lost its character as a present, live controversy of the kind that must exist if [courts] are to avoid advisory opinions on abstract propositions of law.'"

(continued . . .)

7

was mistaken that it continued to have a possessory interest in the property after foreclosure. Quoting MDG Supply, Inc. v. Diversified Invs., Inc., PHH argued that "[a] judgment of foreclosure of mortgage or other lien and sale of foreclosed property is final . . . on the ground that such judgment finally determines the merits of the controversy." 51 Haw. 375, 380, 463 P.2d 525, 528 (1969). PHH also argued that nothing in HRS § 514B-146 alters the propriety of appointing a commissioner to take possession of a property, which is a well-established equitable remedy.

## III. DISCUSSION

The legal question raised by AOAO in this case is identical to the question we answered in Nationstar. Nationstar held that AOAO was not entitled to maintain possession of a unit and collect rents from the unit during the period after summary judgment of foreclosure and before confirmation of sale. Nationstar, 2023 WL 2519855 at *5. The same holding applies here.

---

(continued . . .)
Kona Old Hawaiian Trails Grp. v. Lyman, 69 Haw. 81, 87, 734 P.2d 161, 165 (1987) (alteration in original) (quoting Hall v. Beals, 396 U.S. 45, 48 (1969)). AOAO claimed an entitlement to both possession and rents, and in the alternative, it requested that the court award it common expense assessments as a matter of equity. Thus, although no rents had been collected, other aspects of the controversy were present and live at the time of application.

In Nationstar, we explained that AOAO does not maintain a possessory interest in the property after summary judgment of foreclosure - its right to possession is terminated by the foreclosure judgment, and the circuit court has the equitable power to appoint a commissioner to preserve the value of the property in advance of sale. Id. at *6-7. This is because a "'judgment of foreclosure . . . is final, although it contains a direction to commissioners to make a report of sale and to bring the proceeds into court for an order regarding their disposition.'" Id. at *6 (quoting MDG Supply, 51 Haw. at 380, 463 P.2d at 528).

AOAO's arguments to the contrary are unavailing. "HRS § 514B-146(b) establishes when a mortgagee or other purchaser must begin paying common expenses and assessments; it does not address the propriety of appointing a commissioner to take possession of the property and facilitate the foreclosure sale after the prior owner's interest has been deemed foreclosed." Id. at *6 (citing Larrua, 150 Hawai'i at 441-42, 504 P.3d at 1029-30).[7]

---

[7]    Nationstar also held that while a prior owner's possessory interest and right to collect rent is extinguished upon a decree of foreclosure, HRS § 514B-146(n) carves out an exception that "entitles associations to continue receiving rent after a subsequent mortgage foreclosure, even if a commissioner is appointed, subject to paying any rent received in excess of the total amount of the reimbursements enumerated in HRS § 514B-146(n)(1)-(4) over to the lienholders in order of priority." Id. at *5. Since there were no rents collected in this case, there is no need to apply HRS § 514B-146(n) here.

## IV.   CONCLUSION

For the foregoing reasons, the ICA's May 2, 2022 Judgment on Appeal is affirmed.

DATED:  Honolulu, Hawai'i, April 5, 2023.

| | |
|---|---|
| R. Laree McGuire, for petitioner Association of Apartment Owners of Elima Lani Condominiums | /s/ Mark E. Recktenwald<br><br>/s/ Paula A. Nakayama<br><br>/s/ Sabrina S. McKenna |
| David B. Rosen, Justin S. Moyer, and David E. McAllister, for respondent PHH Mortgage Corporation | /s/ Todd W. Eddins<br><br>/s/ Michael D. Wilson |

